[Cite as *State v. Brown*, 2024-Ohio-1024.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230344 |
| | | TRIAL NO. B-2106094 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| DONALD BROWN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 20, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond L. Katz*, for Defendant-Appellant.

ZAYAS, **Presiding Judge.**

**{¶1}** Donald Brown appeals from his conviction for felonious assault following a jury trial. In one assignment of error, he contends the conviction was against the weight of the evidence because the jury lost its way when it believed the victim's testimony that Brown struck her.

### Factual Background

**{¶2}** Donald Brown was charged with aggravated robbery with firearm specifications, robbery and felonious assault for attempting to rob and causing serious physical harm to Sharon Pittman. He pled not guilty and proceeded to a jury trial.

**{¶3}** Officer Dave Harris, an officer in District Three with the Cincinnati Police Department ("CPD") testified that he was patrolling with his partner Trent Meucci in the Westwood/Fairmount area on November 7, 2021. He responded to a call on Lafeuille Ave. and found a female whose face was completely covered in blood sitting on the steps of an apartment complex. The woman told him that a man gave her a ride, and when she declined his sexual advances, he struck her in the face with a handgun multiple times.

**{¶4}** The beginning five minutes and 30 seconds of the video from Harris's body-worn camera, which showed the officers' initial interactions with the victim, was played for the jury. The officers stepped away from the victim to allow the paramedics to transport her to the hospital. Meucci's body-worn camera video was also admitted into evidence.

**{¶5}** On cross-examination, Harris confirmed that Pittman did not mention that she was engaged in sexual activity for hire, went to Brown's home, and was paid by him. Harris testified that that area is a known prostitution area. Harris was questioned about the police report he wrote. The report reflected that the victim,

Sharon Pittman, had an argument with her friend and got out of his car. Pittman saw a man, later identified as Brown, walking up the street with keys in his hand, and she accepted a ride from him. While in the car, he asked for oral sex. When she said, "No," Brown began to beat her with a gun. Pittman never mentioned that Brown tried to take her money.

{¶6} Pittman testified that she was prostituting on November 7, 2021, on Warsaw and Fairbanks. Brown picked her up, and they went to his home on Harrison Avenue to have sex. After 15 minutes, they got dressed, and Brown paid her $40. They got back in his car so he could drive her back to Warsaw and Fairbanks. Instead, he drove down Lafeuille. Brown pulled over and said he needed to check his tire pressure. He got out of the car, opened the front passenger door, put a gun in her face, and demanded all of her money. Pittman described the gun as black but could not remember the size of the gun. Pittman testified that she did not possess Brown's cell phone or any needles. Pittman identified Brown in court.

{¶7} Instead of giving him her money, Pittman began screaming and kicking him. After she kicked him in the stomach, he started hitting her head and face with the butt of the gun. Pittman could not remember how he was holding the gun, but it was in his right hand. Brown hit her five or six times. She got out of the car and ran down the street. When she saw a four-family apartment with the porch light on, Pittman ran to that porch hoping someone was awake. Brown got back into his car and sat there for a little while. Then he drove down the street, turned around, and left.

{¶8} After waiting for a little while, Pittman called 911. The 911 call was played in court, but most of the call was unintelligible. Pittman recognized her voice but could not understand most of the conversation. Pittman told the operator Brown

3

was wearing an orange shirt and Nike slides. She described his Camaro as a "hot rod." Pittman told the operator that he wanted to have sex and was touching her, and she told him she did not want to have sex. Pittman testified that she was ashamed to tell the operator and the police officers that she was engaged in sexual activity for hire. Pittman did not tell the officers that Brown tried to rob her "because of the story I was telling." She clarified that she did not want to say anything about the money because, "he was trying to touch me, and that was the story."

{¶9} The next day, she spoke with Detective Hall for a few hours. She told Hall the truth that she was prostituting, and after having sex with Brown, he demanded her money. Pittman told him the truth "because I wanted to get the real story out. It made more sense." Pittman drove to Brown's apartment building with Hall and told him what apartment she had entered. Pittman identified Brown in a photo lineup.

{¶10} Pittman denied having any mental-health issues, but admitted she had been diagnosed with borderline personality disorder. At some point, she was proscribed antidepressants but was not taking them in November 2021. Pittman testified that she was using crack cocaine around that time but not heroin. Pittman received stitches on her left forehead, left eyebrow, and her scalp. She also had a rectangular mark on her cheek and two black eyes. Pittman testified that her injuries were caused by Brown.

{¶11} On cross-examination, Pittman admitted to having sex with Brown in his home but denied asking Brown to drive her downtown. Then the following exchange occurred:

Q: Okay. When you called the police, you don't tell them that you've been to his house, do you?

A: No.

Q: In fact, on the 911 call, you say that he gave you a ride.

A: Yeah.

Q: He started touching you sexually.

A: Yeah.

Q: And then he just started hitting you with a gun.

A: Yeah.

Q: Not one of those things is true, is it?

A: No.

Q: Okay. When the police arrived, you talked to the police on the scene.

A: Yes.

Q: And that he demanded oral sex from you.

A: Yes.

Q: But that's not true, right?

A: No.

Q: That was a lie.

A: Yes.

Q: That you said, "no," right?

A: Right.

Q: That's also a lie.

A: Yes.

Q: And when you said no, he started hitting you with a gun.

A: Yes.

Q: That's also a lie.

A: Yes.

* * *

Q: So on November 7th, 2021, you had a conversation with a police officer.

A: Yes.

Q: And you told them that you had a fight with a friend.

A: I guess.

Q: Okay. But that's not true.

A: I don't know. No, that's not true.

Q: And you said you saw [Brown] walking down the street with keys in his hand.

A: I said I saw him walking out of his apartment with keys in his hand.

Q: And when you saw him walking out of his apartment, you asked him for a ride.

A: Yes.

Q: But that's a lie, right?

A: Yes.

Q: Because that didn't happen?

A: No. It did not.

Q: During the course of this driving, that's when he supposedly asked you for the oral sex, right? At least that's the story that you told the police.

A: That's the story I told them.

Q: But that was a lie.

A: That was a lie.

Q: And then you said he pulled out a handgun and started hitting you.

A: Yes.

Q: But that was also a lie.

A: Yes.

Q: Because, according to your story today, he somehow gets out of his car, comes around to the passenger side, and then demands money from you on the passenger side outside of the car.

A: Yes.

{¶12} Pittman admitted that she changed her story the next morning when she spoke with Hall. Hall had come to her home, and she told him the truth.

{¶13} Detective David Hall, a CPD officer, testified that he was assigned the case on November 8, 2021. He read the reports and called Pittman to interview her. They discussed the details over the phone, and Hall went to her home because she indicated that she could show him where Brown lived. After speaking for 15 minutes, they drove to Brown's apartment. Pittman indicated that Brown lived in apartment 2. Hall drove Pittman home and returned to investigate further. The mailbox for apartment 2 said "Donald Brown." As Hall was leaving, he saw a Camaro parked on the street that matched Pittman's description of the car. The car was registered to Cheryl Wright. When Hall checked all of the vehicles registered to Wright, one was also registered to Donald Brown.

**{¶14}** Hall pulled up Brown's information, and the photo matched Pittman's description. Hall created a photo lineup, and Officer Adams conducted the lineup. Pittman identified Brown. Hall knocked on Brown's door several times, but was unable to speak with him before signing the arrest warrant. After Brown was arrested, Hall interviewed him. When questioned about the incident, Brown said that he did not know Pittman. Hall showed him photos of Pittman, and Brown reaffirmed that he did not know who she was. Brown said that he and his mother were the only ones who drove the Camaro, and he had not driven it within the last month. Hall never located the car.

**{¶15}** At the time of the interview, Brown was wearing a knit Bengals hat. Pittman had reported that her assailant was wearing a knit Bengals hat when she was assaulted. After the interview, Hall reviewed Brown's Facebook page and found several photos of Brown wearing the Bengals hat.

**{¶16}** On cross-examination, Hall stated that the only photo he showed Brown was the photo of Pittman's bloody face. When Hall initially spoke with Pittman, she indicated that she had not provided all of the details of the attack to the other officers. She admitted to Hall that she was engaged in sexual activity for hire. Hall confirmed that he wrote the affidavit to support Brown's arrest based on Pittman's statements. The affidavit did not include that Pittman was engaged in sexual activity for hire or that Brown attempted to take the money he had just paid her. The affidavit included the sentence, "When the victim attempted to swing her legs out of the vehicle to flee, Brown pushed her legs back inside the vehicle, preventing her from leaving."

**{¶17}** Detective James Adams testified that he conducted the photo lineup with Pittman. When Adams showed her the lineup, she identified Brown as the perpetrator. When Pittman saw Brown's photo, she began shaking.

**{¶18}** CPD detective Darris Sneed testified that he interviewed Brown after Hall's interview ended. Brown told him that he did not know Pittman and denied any knowledge or involvement in the incident. After Sneed's testimony, the state rested.

**{¶19}** Brown testified that he never tried to rob Pittman, and he did not point a gun at her and demand money or hit her with a gun. He testified that he punched her in self-defense. While driving through Price Hill, Brown picked up Pittman to have sex. Brown was driving his mother's Camaro. They drove to his apartment and had sex. Prior to having sex, Brown paid her $40. Afterwards, they left his apartment. Brown intended to drive her where he picked her up, but she asked him to drive her downtown to buy drugs. Brown testified that when he refused to drive her downtown, her demeanor changed.

**{¶20}** Brown's car was parked on the street, and Pittman got into the vehicle first. When he got in, he began looking for his cell phone to use the Bluetooth to play music, but he could not find his phone. Brown had left his phone on the car charger in the car while they had sex. When he returned to the car, his phone was off the charger. Brown could see that his phone was connected to the car's Bluetooth, so he knew it was in the car, but he could not find the phone. Brown's locket was attached to the side of his phone with a key holder.

**{¶21}** Brown turned around and started driving her back to where he picked her up. He turned right on Lafeuille and stopped to check his tire because he had problems with low tire pressure. Brown's car was in the shop, so he was driving his

9

mother's car. The front passenger tire on his mother's car was low due to a bent rim. As he was driving, the low tire pressure light came on, so he checked the tire to make sure the car was still drivable. The tire was not as low as he expected. When he checked the tire, he suspected that Pittman had his phone. He opened the passenger door unexpectedly to see if she had his phone. Pittman was fidgeting like she was trying to put something away when his phone lit up. When Brown asked Pittman if she was trying to steal his phone, she pulled out a needle. Brown reached for his phone, and Pittman said, "Back the f up," and threatened to stab him with the needle and give him AIDS. Brown was afraid for his life, but he reached for the cell phone because the cell phone case contained his ID and three credit cards. Brown noticed that she also had his gold locket containing the cremated remains of his father.

{¶22} Pittman tried to attack him while he stood in the doorway, preventing her from leaving the car, and she was halfway out of the car. Pittman forced her way out of the car and tried to stab him with the needle. Brown punched her several times. He testified that he was trying to get his phone while protecting himself from being stabbed. Pittman had placed his phone and locket in her coat pocket. During the struggle, the phone and locket fell to the ground. Brown picked up his belongings, and Pittman ran away. She was not bleeding when she fled.

{¶23} Pittman ran down the street, and Brown picked up his credit cards because they had fallen out of the case. Then he left. Brown again denied trying to rob her and testified that he did not own a gun and did not have a gun that night.

{¶24} After his arrest, Hall showed him a photo of a woman's face covered with blood, and he could not determine who it was. Brown testified that he did not recognize Pittman from the photo. He admitted that he knew what they were talking

about, but he told the officer that he did not know what happened. Brown did not trust the police because his stepfather was "murdered by the police," and he did not want to discuss the incident with them.

**{¶25}** Brown admitted that he had rented a gun before at a shooting range. Hall had located photos of Brown at a shooting range on Brown's Facebook page. Brown testified that he had never previously hired a woman to engage in sexual activity.

**{¶26}** The jury found Brown not guilty of the aggravated-robbery and robbery offenses and found him guilty of felonious assault. He now appeals arguing that the conviction was against the weight of the evidence.

### Manifest Wright of the Evidence

**{¶27}** "In reviewing a weight-of-the-evidence claim, we review 'the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Morris*, 1st Dist. Hamilton No. C-220073, 2022-Ohio-4597, ¶ 20, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *Id.*

**{¶28}** Brown was convicted of felonious assault under R.C. 2903.11(A)(1) for knowingly causing serious physical harm to Pittman. Serious physical harm includes any physical harm that involves some temporary, substantial incapacity, some permanent disfigurement or temporary, serious disfigurement, or acute pain of such

duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain. R.C. 2901.01(A)(5)(c-e).

{¶29} Brown contends that Pittman's admission on cross-examination that her initial report to the police was inaccurate should be construed as an admission that Brown never had a gun. Brown argues that the jury lost its way because Pittman acknowledged, during cross-examination, that she lied about "every aspect of her encounter with Donald Brown."

{¶30} Brown's entire argument is based on his claim that Pittman lied when she testified on direct examination that Brown struck her with a gun because she refuted that testimony on cross-examination. But the record does not support Brown's argument that Pittman admitted that Brown did not have a gun, and therefore, lied. Pittman testified on direct examination that Brown opened the passenger door, demanded money, and hit her with a gun when she refused. Although she testified that her initial account of the attack was untrue, Pittman further testified that Brown hit her multiple times with the butt of a gun and that she received stitches on her left forehead, left eyebrow, and her scalp as a result of the assault. Photographs of the injuries to Pittman's face and her medical records were admitted into evidence, documenting the serious physical harm.

{¶31} The jury was in the best position to assess the credibility of the witnesses and resolve the conflicting testimony, and we defer to the jury regarding the credibility of the witnesses. Based on this record, this court cannot conclude that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶32} We overrule the assignment of error.

## Conclusion

**{¶33}** Having overruled Brown's sole assignment of error, we affirm the trial court's judgment.

Judgment affirmed.

**WINKLER** and **KINSLEY, JJ.,** concur.

Please note:

The court has recorded its own entry this date.